644 S.E.2d 28 (2007)
In the Matter of J.E., Q.D.
No. COA06-1335.
Court of Appeals of North Carolina.
May 15, 2007.
Tyrone C. Wade, Charlotte, for petitioner-appellee Mecklenburg County Youth and Family Services.
Matt McKay, attorney advocate.
Betsy J. Wolfenden, Chapel Hill, for respondent-appellant.
TYSON, Judge.
J.B. ("respondent") appeals from order terminating her parental rights to her minor children, J.E. and Q.D. We reverse.

I. Background
On 14 December 1999, respondent gave birth to J.E. On 18 October 2002, Mecklenburg County Youth and Family Services ("YFS") filed a juvenile petition that alleged J.E. was a neglected and dependent juvenile. A non-secure custody order placed J.E. with her maternal grandmother. YFS presented no evidence in the record to show a guardian ad litem ("GAL") was appointed to represent J.E. at that time.
On 22 October 2002, an initial (7-Day) hearing was conducted and on 29 October 2002 the order from the initial (7-Day) hearing was filed. No GAL was listed as being present at the 7-Day hearing. Although J.E. was returned to respondent's physical custody, the trial court concluded it was in J.E.'s best interest to remain in YFS's legal custody.
On 16 December 2002, an adjudicatory hearing was conducted and the resulting order was filed later that day. The order states the following persons were present at the hearing: (1) respondent's attorney; (2) YFS's attorney; (3) a social worker; (4) an attorney advocate; (5) Sharon McGee ("McGee"), as GAL for J.E.; and (6) another YFS employee. Respondent was not present at the adjudicatory hearing. J.E. was adjudicated a neglected and dependent juvenile as to respondent. The trial court ordered J.E. removed from respondent's physical custody and be placed in foster care. The dispositional hearing was calendared for 7 January 2003.
On 7 January 2003, a dispositional hearing was conducted and the resulting order was filed later that day. The order indicated the following persons were present at the hearing: (1) respondent; (2) respondent's attorney; (3) YFS's attorney; (4) a social worker; (5) an attorney advocate; (6) McGee and Ondine Denice ("Denice") as GALs for J.E.; and (7) J.E.'s grandparents. The order also references a GAL report. No GAL report is included in the record on appeal. The dispositional hearing was continued to 10 February 2003.
The dispositional hearing was conducted on 10 February 2003. The order indicates McGee's presence as GAL for J.E. Respondent was also present. The trial court concluded it was in J.E.'s best interest to remain in foster care. The trial court did not receive or consider a GAL report in making its determination.
On 31 March 2003, a review hearing was conducted. The order states respondent was present and Denice was present as GAL for J.E. The trial court concluded it was in J.E.'s best interest to return to the physical custody of J.E.'s maternal grandmother. Legal custody remained with YFS. The trial court stated it received and considered a GAL report in making its determination. The record on appeal contains no GAL report.
On 25 September 2003, a review hearing was conducted and the resulting order was filed on 26 September 2003. The order does not indicate a GAL was present at the hearing. The trial court concluded it was contrary *30 to J.E.'s best interest to return to respondent's home and physical custody of J.E. was to continue with her maternal grandmother. A permanency planning hearing was scheduled for 2 December 2003. No evidence exists in the record that a hearing was conducted on that date.
On 10 July 2003, respondent gave birth to Q.D. On 12 November 2003, YFS filed a juvenile petition that alleged Q.D. was a neglected and dependent juvenile. A non-secure custody order was also filed that placed Q.D. with his maternal grandmother. No evidence exists in the record that a GAL was appointed to represent Q.D. at that time.
On 17 November 2003, an initial (7-Day) hearing was conducted and the order from the hearing was filed. The order states that the following people were present at the hearing: (1) respondent; (2) respondent's attorney; (3) Q.D.'s father; (4) the father's attorney; (5) GAL administrator, Denice; (6) attorney advocate, Matt McKay ("McKay"); (7) YFS social workers; (8) Q.D.'s paternal grandmother; (9) a paternal relative of Q.D.; and (10) a YFS attorney. The trial court ordered that paternity of Q.D. be established with the putative father and that placement of Q.D. was to remain with her maternal grandmother. An adjudicatory hearing was scheduled for 15 January 2004.
On 12 April 2004, the adjudicatory hearing for Q.D. was held and the resulting order was filed later that day. The order does not recite a GAL as being present at the hearing, but states attorney advocate McKay was present. The case was continued to 6 May 2004 after respondent's attorney withdrew.
On 6 May 2004, the trial court conducted both an adjudicatory hearing for Q.D. and a review hearing for J.E. The resulting order was filed on 8 June 2004. The order states Denice was present, as GAL supervisor. The trial court concluded that Q.D. was a neglected and dependent juvenile. Both Q.D. and J.E. were ordered to remain in YFS's legal custody with physical placement with their maternal grandmother. The goal for both children remained reunification with respondent.
On 2 August 2004, a combined permanency planning/review hearing for Q.D. and J.E. was conducted. The order states Jackie Everdt ("Everdt") was present as GAL. Respondent was not present, but was represented by an attorney. The permanent plan for J.E. was changed to adoption. The trial court also concluded "termination of parental rights is in . . . [J.E.'s] best interests[.]" The permanent plan for Q.D. was changed from reunification with respondent to reunification with his father. A permanent plan review hearing for Q.D. was scheduled for 4 October 2004.
On 23 September 2004, YFS filed a petition to terminate respondent's parental rights to J.E. YFS also petitioned to terminate J.E.'s father's parental rights. On 28 September 2004, an order was filed that appointed Jodi Pugsley ("Pugsley") as GAL for both J.E. and Q.D. The order also appointed McKay as attorney advocate for both children.
On 4 October 2004, a permanency planning hearing was conducted for Q.D. The order recites that Everdt was present as GAL. The permanent plan for Q.D. was changed from reunification with his father to adoption. The trial court also concluded "termination of parental rights is in . . . [Q.D.'s] best interests[.]" The trial court also ordered YFS to file a petition to terminate parental rights to Q.D. On 17 November 2004, YFS filed a petition to terminate respondent's parental rights to Q.D. YFS also petitioned to terminate the parental rights of Q.D.'s father.
On 17 December 2004, a review hearing for Q.D. was conducted. The order states Everdt was present as GAL. The trial court reiterated "termination of parental rights is in . . . [Q.D.'s] best interests[.]"
On 17 November 2005, a hearing was conducted on the petitions to terminate respondent's and the childrens' fathers' parental rights to J.E. and Q.D. On 19 December 2005, the resulting order was filed. The order recites those present at the hearing as: (1) respondent; (2) respondent's attorney; (3) Q.D.'s father's attorney; (4) a GAL for respondent; (5) Mary Guecia ("Guecia"), as GAL; (6) McKay, as attorney advocate; (7) a YFS social worker; and (8) YFS's attorney. *31 As GAL, Guecia did not testify at the termination hearing or present a GAL report.
The trial court concluded: (1) respondent and the fathers of J.E. and Q.D. neglected the children; (2) J.E. and Q.D. are dependent juveniles; and (3) J.E. and Q.D.'s best interests would be served by terminating respondent's parental rights and the childrens' fathers' parental rights. J.E.'s and Q.D.'s fathers did not appeal. Respondent appeals.

II. Issues
Respondent argues the trial court erred by: (1) failing to appoint a GAL for J.E. and Q.D.; (2) allowing an unappointed GAL represent J.E. and Q.D. at the termination hearing when there was no evidence that the appointed GAL had been released by the trial court; (3) appointing a GAL to represent J.E. and Q.D. at the termination hearing who had not represented the children from the time their juvenile petitions alleging neglect had been filed; and (4) concluding it was in J.E.'s and Q.D.'s best interests to terminate respondent's parental rights.

III. Appointment of a Guardian

Ad Litem
In her first three assignments of error, respondent argues the trial court violated N.C. Gen.Stat. § 7B-601 and § 7B-1108. Respondent asserts a GAL should have been appointed from the first petition alleging neglect "investigating and determining the best interest of the child[.]"
N.C. Gen.Stat. § 7B-601(a) provides in relevant part:
When in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile. When a juvenile is alleged to be dependent, the court may appoint a guardian ad litem to represent the juvenile. . . . The duties of the guardian ad litem program shall be to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court.
(Emphasis supplied).
This Court addressed similar arguments in In re A.D.L., J.S.L., C.L.L., 169 N.C.App. 701, 612 S.E.2d 639, disc. rev. denied, 359 N.C. 852, 619 S.E.2d 402 (2005) and In re R.A.H., 171 N.C.App. 427, 614 S.E.2d 382 (2005).

A. In re A.D.L.
In In re A.D.L., DSS filed a petition alleging the respondent mother's three children were neglected. 169 N.C.App. at 703, 612 S.E.2d at 641. "The district court terminated respondent's parental rights, based on the grounds alleged, by order filed 7 October 2002." Id. at 704, 612 S.E.2d at 641.
On appeal, the respondent argued the trial court's "decision [to terminate her parental rights] must be reversed because the court failed to appoint a guardian ad litem for the children." Id. at 706, 612 S.E.2d at 643. The respondent asserted, "the record fails to disclose guardian ad litem appointment papers, and accordingly, the district court's order must be reversed." Id. This Court stated, "In order to obtain relief from an order due to a clerical or technical violation, the complaining party must demonstrate how she was prejudiced or harmed by the violation." Id. (emphasis supplied) (internal citations and quotations omitted).
This Court in In re A.D.L. held the respondent had failed to demonstrate any prejudice she suffered by the trial court's failure to appoint a GAL and overruled the respondent's assignment of error. 169 N.C.App. at 707, 612 S.E.2d at 643. This Court concluded:
The record on appeal does not reflect a guardian ad litem appointment form was filed. However, except for the initial hearing following the entry of the non-secure order to assume custody of the juveniles in August of 2001, the guardian ad litem was *32 noted as present at each and every hearing prior to and including the TPR hearing where she represented the interest of the children. In addition, the guardian ad litem was named in the TPR petition.

Id. (emphasis supplied).

B. In re R.A.H.
In In re R.A.H., DSS filed a petition alleging that the respondent mother's child was neglected. 171 N.C.App. at 428, 614 S.E.2d at 383. The respondent's parental rights were terminated to her child based upon a finding of neglect. Id.
No GAL was appointed when DSS filed its petition alleging neglect. Id. at 430, 614 S.E.2d at 384. No GAL was appointed until three days after commencement of the termination hearing. Id. On appeal, the respondent asserted the trial court erred by failing to appoint a GAL for the respondent's child prior to the termination hearing. Id. at 428, 614 S.E.2d at 383.
We agreed, and held:
Pursuant to N.C. Gen.Stat. § 7B-1108(d) and § 7B-601, there should have been a guardian ad litem investigating and determining the best interests of the child from the first petition alleging neglect . . . through the final determination. There should have been a guardian ad litem representing R.A.H. at the termination hearing who had been involved in the case from the beginning.

Id. at 430, 614 S.E.2d at 384.
This Court also addressed the prejudice the respondent suffered and stated, "[B]ecause our polar star in these proceedings is the best interests of the child, we must presume prejudice where, as here, a child was not represented by a guardian ad litem at a critical stage of the termination proceedings." Id. at 431, 614 S.E.2d at 385.
The dissenting opinion attempts to distinguish the holding in In re R.A.H. with In re O.C. & O.B., 171 N.C.App. 457, 463, 615 S.E.2d 391, 396, disc. rev. denied, 360 N.C. 64, 623 S.E.2d 587 (2005), In re E.T.S., 175 N.C.App. 32, 37, 623 S.E.2d 300, 302 (2005), and In re L.A.B., ___ N.C.App. ___, ___, 631 S.E.2d 61, 66 (2006).
In the cases cited in the dissenting opinion, this Court dealt with the appointment of a GAL for the parent pursuant to N.C. Gen.Stat. § 7B-601(b)(1). This is a separate and distinct issue from the case at bar. This Court in In re R.A.H. dealt with the appointment of a GAL for the juvenile pursuant to N.C. Gen.Stat. § 7B-601(a). 171 N.C.App. at 428, 614 S.E.2d at 383. We determined the best interests of juveniles and the statutes require a GAL to be appointed "from the first petition alleging neglect . . . through the final determination." Id. at 430, 614 S.E.2d at 384 (emphasis supplied). "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." In re Appeal from Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). We are bound by this Court's previous holding in In re R.A.H. dealing with the precise issue before us.

C. Analysis
Here, respondent argues the trial court violated N.C. Gen.Stat. § 7B-601(a) because no GAL was appointed when YFS filed its petitions that alleged J.E. and Q.D. were neglected. Respondent asserts the violation of the statute prejudiced her, J.E., and Q.D. because no permanent GAL was provided "to protect and promote the best interests" of either child as required by the statutes. N.C. Gen.Stat. § 7B-601(a). We agree.
On 18 October 2002, YFS filed a juvenile petition that alleged J.E. was a neglected and dependent juvenile. On 12 November 2003, YFS filed a juvenile petition that alleged Q.D. was a neglected and dependent juvenile. At neither time did the trial court appoint a GAL. Though different GALs sporadically appeared at different proceedings, no GAL was formally appointed to represent either J.E. or Q.D. until 28 September 2004 when an order was filed, appointing Pugsley as GAL for both children. Pugsley, the only GAL formally appointed, never appeared on either J.E. or Q.D.'s behalf.
*33 N.C. Gen.Stat. § 7B-601(a) states, "When in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile." (Emphasis supplied). As this Court stated in In re R.A.H., "there should have been a[GAL] investigating and determining the best interests of the child from the first petition alleging neglect . . . through the final determination." 171 N.C.App. at 430, 614 S.E.2d at 384 (emphasis supplied). The trial court violated N.C. Gen.Stat. § 7B-601(a) by not appointing a GAL to represent either J.E. or Q.D. "from the first petition alleging neglect[.]" Id. at 430, 614 S.E.2d at 384.
Respondent argues both children suffered prejudice and asserts no GAL appointed to represent the children's interest was present at the hearings even though the best interest determinations for J.E. and Q.D. were being made. Respondent also argues a permanent GAL should have been representing J.E. and Q.D. at the termination hearing, who had been involved in the case from the beginning.
This Court has stated, "[B]ecause our polar star in these proceedings is the best interests of the child, we must presume prejudice where . . . a child was not represented by a[GAL] at a critical stage of the termination proceedings." Id. at 431, 614 S.E.2d at 385.
Here, no GAL was present at the hearings on 22 October 2002, 25 September 2003, and 12 April 2004 where the best interest determinations for J.E. and Q.D. were being made. With no GAL present at any of these critical hearings, respondent, J.E., and Q.D. were prejudiced. Id. Respondent, J.E., and Q.D. were also prejudiced because "there should have been a[GAL] representing [the children] at the termination hearing who had been involved in the case from the beginning." Id. at 430, 614 S.E.2d at 384.
Evidence in the record shows five different GALs made sporadic appearances for J.E. and Q.D. at different hearings over the three year period. Guecia, who appeared as the children's GAL at the termination hearing, was never formally appointed and had never previously appeared on their behalf. Pugsley, who was the only GAL actually appointed by the Court for both J.E. and Q.D., never appeared at any hearing on either child's behalf. With the initial absence of and the multitude of later GALs making sporadic appearances at critical hearings, no GAL was discharging their duty "to protect and promote the best interests of the [children] until formally relieved of the responsibility by the court." N.C. Gen.Stat. § 7B-601(a).
Our review of In re A.D.L. shows the facts in that case are distinguishable from those here. This Court in In re A.D.L. found no prejudice when, "except for the initial hearing following the entry of the non-secure order to assume custody of the juveniles . . ., the guardian ad litem was noted as present at each and every hearing prior to and including the TPR hearing where she represented the interest of the children." 169 N.C.App. at 707, 612 S.E.2d at 643 (emphasis supplied).
The record does not show any GAL being present at the hearings on 22 October 2002, 25 September 2003, and 12 April 2004. While the 22 October 2002 hearing was an initial hearing, the other hearings were not. Unlike the facts in In re A.D.L., no GAL was present at some of the hearings subsequent to the initial hearing, when the "best interest" determinations were made.
Also, in In re A.D.L. this Court stated, "the guardian ad litem was noted as present at each and every hearing[.]" 169 N.C.App. at 707, 612 S.E.2d at 643. Here, at the hearings where a GAL was recited in the order as being present, five different GALs made appearances for J.E. and Q.D. at different hearings over the three year period. Four GALs who made appearances on the children's behalf had never been appointed. The GAL who was appointed was not present at the termination proceeding and had not been relieved by a court order. N.C. Gen. Stat. § 7B-601(a). Nothing in the record on appeal shows a prior GAL was released before a new GAL was appointed. Id.

IV. Conclusion
The trial court violated N.C. Gen.Stat. § 7B-601(a) by failing to appoint a GAL to represent either J.E. or Q.D. upon YFS's filing of a petition alleging neglect. In re *34 R.A.H., 171 N.C.App. at 430, 614 S.E.2d at 384. This failure prejudiced respondent, J.E., and Q.D. because: (1) no GAL was present at the hearings when "best interest" determinations for J.E. and Q.D. were being made; (2) no permanent GAL was provided "to protect and promote the best interests" of either child; and (3) where a GAL was recited as being present, five different GALs made sporadic appearances for J.E. and Q.D. at different hearings over the three year period. No record of a prior GAL being released and a new GAL being appointed appears. N.C. Gen.Stat. § 7B-601(a). The trial court's order terminating respondent's parental rights is reversed.
Reversed.
Judge JACKSON concurs.
Judge HUNTER dissents by separate opinion.
HUNTER, Judge, dissenting.
Because the majority has inappropriately applied this Court's holding in In re R.A.H., I respectfully dissent.[1]
Under N.C. Gen.Stat. § 7B-601(a) (2005) "[w]hen in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem ["GAL"] to represent the juvenile." In both J.E.'s and Q.D.'s petitions they were alleged to be neglected. The trial court complied with the statute in this case by stating that "[t]he petitioner is informed that the [GAL] Program . . . has been appointed guardian of said child[ren] and the attorney advocate for the [GAL] Program has been appointed attorney advocate for the child[ren]." It is undisputed that the children were represented by a GAL at the termination hearing. The only times in which the record reflects that a GAL was not present on behalf of the children occurred during J.E.'s initial seven-day order on 22 October 2002, his review hearing order on 25 September 2003, and Q.D.'s adjudicatory hearing order on 12 April 2004. Even during those hearings, however, the attorney advocate for the GAL program was present. See N.C. Gen.Stat. § 7B-601(a) (attorney advocate shall "assure protection of the juvenile[s'] legal rights"). Respondent's parental rights were terminated on 19 December 2005 after a hearing held on 17 November 2005. Thus, the issue before this Court is whether an order terminating parental rights should be affirmed when both children were represented by a GAL at the termination hearing while unrepresented during some hearings not on direct appeal to this Court.
This Court in In re R.A.H., 171 N.C.App. 427, 614 S.E.2d 382 (2005), held that prejudice will be presumed where "a child was not represented by a [GAL] at a critical stage of the termination proceedings." Id. at 431, 614 S.E.2d at 385. In that case, the child was not represented by a GAL during the first three and a half days of a termination hearing and the mother's parental rights were terminated. Id. at 430, 614 S.E.2d at 384. The mother then appealed "[f]rom the order terminating her parental rights" to the child. Id. at 428, 614 S.E.2d at 383.
In the instant case, respondent is also appealing the order terminating her parental rights. Unlike respondent in In re R.A.H., however, respondent in this case points to the children's lack of representation at prior hearings, to which she did not object nor later appeal, as grounds to overturn the trial court's termination order. Unlike the child in In re R.A.H., the children in this case were represented at every stage of the termination hearing.
This Court has dealt with a similar issue relating to GAL representation of parents *35 facing termination hearings and has held that where a GAL is required, and the trial court fails to appoint one in the proceeding being appealed, this Court must reverse. In re O.C. & O.B., 171 N.C.App. 457, 463, 615 S.E.2d 391, 396 (2005); see also In re E.T.S., 175 N.C.App. 32, 37, 623 S.E.2d 300, 302 (2005); In re L.A.B., ___ N.C.App. ___, ___, 631 S.E.2d 61, 66 (2006). Accordingly, this Court has also held that when the trial court fails to appoint a GAL in a prior proceeding not on direct appeal, we will not reverse. In re O.C. & O.B., 171 N.C.App. at 463, 615 S.E.2d at 395. The rationale behind this rule is clear and, in relevant part, is quoted below:
First, [allowing respondents to allege errors based on prior orders] would create uncertainty and render judicial finality meaningless. Termination orders entered three, five, even ten years after the initial adjudication could be cast aside. Secondly, by necessarily tying the adjudication proceedings and termination of parental rights proceedings together, respondent misapprehends the procedural reality of matters within the jurisdiction of the district court: Motions in the cause and original petitions for termination of parental rights may be sustained irrespective of earlier juvenile court activity.
Id. In short, "there is no statutory authority for the proposition that the instant order is reversible because of a GAL appointment deficiency that may have occurred years earlier." Id. at 462, 615 S.E.2d at 395.
In the instant case, the hearing in which Q.D. was purportedly unrepresented occurred over a year before the termination hearing, and the hearings in which J.E. was purportedly unrepresented occurred approximately two and three years before the termination hearing. More importantly, the trial court's order should be affirmed because the prior orders in which the children were purportedly unrepresented are not on appeal before this Court and because a GAL represented the children during the entire termination proceeding. Thus, because it cannot be said that the children were unrepresented during a "critical stage" of the termination hearing, I would affirm the trial court as to this issue. As such, I respectfully dissent.
NOTES
[1] Petitioner argues in its brief that respondent's arguments regarding guardian ad litem representation should be deemed abandoned because the assignments of error relating to that issue were not brought forward before the record on appeal was settled. After the record on appeal was filed, respondent moved to add the only additional assignments of error which are argued on this appeal. This motion was granted. Under North Carolina Rule of Appellate Procedure 9(b)(5), any party may make a motion to this Court to "order additional portions of a trial court record or transcript sent up and added to the record on appeal." Petitioner had notice of the Rule 9 motion before its brief was filed with this Court, and as such, could have made a Rule 9 motion to amend the record to add any necessary documents needed to address the issue of guardian ad litem representation. Accordingly, the issue is properly before this Court.