An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-4

Filed 15 October 2025

Gaston County, Nos. 22JT000056-350, 22JT000057-350, 22JT000058-350

IN THE MATTER OF: P.U.M.C., N.M.P., T.M.P., Jr.

Appeal by respondent-mother from order entered 3 September 2024 by Judge Angela G. Hoyle in Gaston County District Court. Heard in the Court of Appeals 30 September 2025.

*J. Edward Yeager, Jr. for petitioner-appellee Gaston County Department of Social Services.*

*Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for guardian ad litem.*

*Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky L. Brammer, for respondent-mother.*

PER CURIAM.

Mother appeals from the trial court's order terminating her parental rights to her minor children, Thomas, Nicole, and Payton (collectively, the "children").[1] On appeal, Mother raises two issues: (1) the trial court repeatedly misapprehended the law in ways that deprived her of her right to a fair termination proceeding; and (2)

---

[1] Pseudonyms are used to protect the juveniles' identities, pursuant to N.C. R. App. P. 42(b).

alternatively, the trial court failed to ensure the children received adequate representation at the termination hearing, as the GAL did not present any evidence concerning the children's best interests. For the reasons discussed herein, we vacate the trial court's order and remand for a new disposition hearing.

## I.    Factual and Procedural Background

Mother is the biological parent of the children: Thomas, Nicole, and Payton.[2] On 18 February 2022, the Gaston County Department of Health and Human Services ("DHHS") filed a petition alleging that Thomas, Nicole, and Payton were neglected and dependent juveniles. The trial court granted DHHS nonsecure custody of the children that same day. The petition alleged as follows.

On 22 November 2021, DHHS received a neglect report alleging that Mother was homeless and using drugs. On 29 November 2021, DHHS met with Mother at an urgent care facility. She explained that the visit was for a health assessment for Thomas, which was required for him to remain enrolled in school. Mother also disclosed that the family was homeless and staying in nearby hotels. Following this meeting, DHHS made several additional attempts to meet with Mother and the children but was unsuccessful.

On 11 January 2022, DHHS received a second report involving truancy allegations and concerns regarding Mother's failure to pick up Thomas from school

---

[2] Respondent-father is not a party to this appeal.

on time. On 13 January 2022, DHHS was notified that Thomas had once again not been picked up from school, and Mother could not be reached by phone. DHHS assumed temporary custody of Thomas until Mother arrived to pick him up at approximately 10:00 p.m. that evening. That night, Mother entered into a safety plan with DHHS and agreed to keep DHHS informed of the family's whereabouts. Over the following weeks, Thomas was picked up late from school on several occasions, and Mother failed to maintain contact with DHHS. Additionally, DHHS scheduled multiple meetings and requested drug screenings from Mother, but she failed to attend or comply with any of the appointments.

Following a hearing on 31 May 2022, the trial court adjudicated the children neglected and dependent based on findings of fact consistent with the allegations in the petition. A dispositional hearing was held on 19 July 2022, but Mother was not present. The trial court ordered that the children remain in DHHS custody and Mother comply with all recommendations under her case plan. The case plan required Mother to, among other things, complete mental health and substance abuse assessments; obtain stable housing and employment; submit to and comply with drug screens; complete parenting classes; and maintain contact with DHHS.

The trial court held permanency planning hearings on the following dates: 6 December 2022, 28 February 2023, 23 May 2023, 15 August 2023, 5 December 2023, 5 March 2024, 4 June 2024, and 30 July 2024. Mother was only present for the 28 February 2023 hearing. Mother's counsel was not present at the hearings held in

December 2022, June 2024, and July 2024. At each hearing, the trial court consistently found that Mother had failed to make reasonable progress, had not corrected the conditions that resulted in the removal of the juveniles from her custody, and had not completed her case plan. As a result, on 18 August 2023, DHHS filed a petition to terminate Mother's parental rights to Thomas, Nicole, and Payton. On 21 August 2023, Mother was appointed new counsel solely for the termination hearing.

The termination petition was heard on 5 August 2024. Mother was not present. At the hearing, the trial court received testimony from three DHHS social workers. On 3 September 2024, the trial court entered an order concluding that grounds existed to terminate Mother's parental rights for neglect and willful failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(1) and (2) and that termination would be in the children's best interests. The trial court incorporated all prior court orders, DHHS reports, and guardian ad litem ("GAL") reports from the underlying matter into its findings of fact. Mother timely appealed from the 3 September 2024 termination order.

## II. Issues

Mother argues two issues on appeal: (1) the trial court misapprehended the law numerous times in ways that detrimentally impacted Mother's ability to receive a fair termination proceeding; and (2) alternatively, the trial court failed to ensure the children received adequate representation at the termination hearing, as the GAL

did not present any evidence regarding the children's best interests.

## III. Analysis

### A. Misapprehensions of Law

It is well established that "[a] parent whose rights are considered in a termination of parental rights proceeding must be provided with fundamentally fair procedures consistent with the Due Process Clause of the Fourteenth Amendment." *In re J.E.B.*, 376 N.C. 629, 633 (2021) (internal quotations and citations omitted); *see also In re K.M.W.*, 376 N.C. 195, 208 (2020) ("[W]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures[.]" (citations omitted)). Here, Mother asserts she was denied a fundamentally fair termination proceeding due to various misapprehensions of the law by the trial court, which we address in turn.

### 1. Counsel's Presence at Permanency Planning Hearings

First, Mother argues that she was deprived of a fair termination proceeding because the trial court conducted three permanency planning hearings without the presence of her counsel. Specifically, the orders from the hearings held in December 2022, June 2024, and July 2024 indicate that Mother's counsel "waive[d] his appearance."

Mother has appealed only from the 3 September 2024 order terminating her parental rights; accordingly, that order is the sole matter properly before this Court for review. The permanency planning hearing orders are not subject to appellate

review in this case. *See* N.C. R. App. P. 3(d) ("The notice of appeal . . . shall designate the judgment or order from which appeal is taken[.]"). Moreover, Mother has failed to cite any legal authority or present any argument in support of this issue. *See* N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Thus, Mother's first argument is dismissed.

### 2. *Mother's Counsel for Termination Hearing*

Second, Mother argues that the trial court erred by appointing different counsel to represent her during the termination proceeding. However, she fails to explain how the change in representation prejudiced the outcome of the proceeding.

Pursuant to N.C.G.S. § 7B-1101.1(a), "[t]he parent has the right to counsel, and to appointed counsel in cases of indigency, unless the parent waives the right." Mother was represented by appointed counsel throughout the underlying matter. After the petition to terminate her parental rights was filed on 18 August 2023, new counsel was appointed on 21 August 2023 to represent her solely in the termination proceeding. Thereafter, on 9 January 2024, her newly appointed counsel filed a response to the termination petition.

At the termination hearing, Mother's new counsel indicated that after the response was filed, Mother initially showed some interest in pursuing her case. However, she made no further effort to communicate with counsel after January 2024. In the weeks leading up to the termination hearing, Mother missed several

scheduled appointments and appeared over three hours late to the one appointment she did attend.

We find no merit in Mother's argument that the appointment of different counsel rendered the termination proceeding fundamentally unfair. She was appointed new counsel for the termination proceeding on 21 August 2023, nearly a full year before the termination hearing on 5 August 2024. During that time, she had ample opportunity to communicate with her attorney and prepare for the hearing. The record indicates that it was Mother's failure to maintain contact and attend scheduled meetings, not the change in representation, that hindered her attorney's ability to prepare for the termination hearing.

For these reasons, Mother was not deprived of a fair proceeding based on the appointment of different counsel.

### 3. *Appearance of GAL Attorneys*

Next, Mother argues that the trial court failed to ensure that the children received consistent and proper representation, as several different GAL attorneys appeared throughout the permanency planning proceedings. She further contends that Respondent-Father's appointed counsel withdrew from the case, accepted a position with the GAL program, and subsequently appeared as a GAL attorney advocate for the children in this matter, thereby creating a conflict in representation. Mother asserts that the trial court's failure to provide consistent and appropriate representation for the children was "inextricably intertwined" with the termination

proceeding.

This Court addressed a similar issue in *In re J.E.*, where the respondent "point[ed] to the children's lack of representation at prior hearings, to which she did not object nor later appeal, as grounds to overturn the trial court's termination order." 183 N.C. App. 217, 228 (2007) (Hunter, J. dissenting). Our Supreme Court subsequently reversed this Court, adopting the dissenting opinion. *In re J.E.,* 362 N.C. 168 (2008). The dissent reasoned that allowing respondents to challenge termination orders based on alleged errors in prior hearings "would create uncertainty and render judicial finality meaningless." *In re J.E.*, 183 N.C. App. at 228 (Hunter, J. dissenting) (*citing In re O.C. & O.B.*, 171 N.C. App. 457, 463 (2005)). Additionally, termination orders "may be sustained *irrespective* of earlier juvenile court activity." *Id.* (citation omitted) (emphasis in original). Further, and more importantly, the prior orders concerning alleged inadequate representation were not before the Court on appeal. *Id.* at 229. For these reasons, the termination order was affirmed. *Id.*, *rev'd,* 362 N.C. 168 (2008).

Similarly, in the instant case Mother points to the different GAL attorneys who represented the children at prior hearings, orders she neither objected to below nor appealed from, as grounds to reverse the termination order. Consistent with *In re J.E.*, allowing Mother to raise errors based on the prior orders "would create uncertainty and render judicial finality meaningless." *In re J.E.*, 183 N.C. App. at 228. Moreover, the orders from those proceedings are not properly before this Court

for appellate review. Accordingly, Mother's argument is without merit. *See id.* at

228–29 ("[T]here is no statutory authority for the proposition that the instant order

is reversible because of a GAL appointment deficiency that may have occurred years

earlier." (citation omitted)).

### 4. *Default Judgment*

Lastly, Mother challenges the trial court's conclusion of law stating, "[t]he

Department is entitled to a judgment terminating the parental rights of

Respondent/mother herein pursuant to N.C.G.S. 1A-1, Rule 55 and N.C.G.S. 7B-

1107."

The trial court referenced North Carolina Rule of Civil Procedure 55, which

governs the entry of default judgments. N.C.G.S. § 1A-1, Rule 55. Mother correctly

observes that "a default judgment or judgment on the pleadings is inappropriate in a

proceeding involving termination of parental rights[.]" *In re Shaw*, 152 N.C. App.

126, 129 (2002) (citation omitted). The trial court also cited N.C.G.S. § 7B-1107,

which states:

> Upon the failure of a respondent parent to file written
> answer to the petition . . . within 30 days after service of
> the summons and petition . . . the court may issue an order
> terminating all parental and custodial rights of that parent
> with respect to the juvenile.

N.C.G.S. § 7B-1107 (2023). However, Mother filed an answer to the termination

petition. Thus, she is correct that this statute is inapplicable. Mother argues this

conclusion of law was erroneous because the trial court concluded DHHS was entitled

to a default judgment terminating her parental rights. Contrary to Mother's assertion, the record clearly reflects that the trial court did not rely on a default judgment. Rather, the trial court held a full hearing, received testimony from DHHS social workers, made forty-two detailed findings of fact, and concluded that two grounds existed to terminate Mother's parental rights pursuant to N.C.G.S. §§ 7B-1111(a)(1) and (2). There is no indication in the record that the termination of her parental rights was based on a default judgment. Accordingly, regardless of this erroneous conclusion, the error is harmless, as the trial court's findings of fact support its determination that Mother's rights were subject to termination under N.C.G.S. §§ 7B-1111(a)(1) and (2). *See In re Bluebird*, 105 N.C. App. 42, 51, (1992) (holding despite the trial court failing to specify the grounds for termination in its order, the error was harmless "because the evidence strongly support[ed] the trial court's conclusion[.]").

In sum, we discern no error that deprived Mother of a fundamentally fair termination proceeding.

### B. GAL Representation at the Termination Hearing

Next, Mother argues that the trial court erred by failing to require the GAL to present any evidence regarding the children's best interests during the dispositional phase of the termination hearing. She contends that without evidence from the GAL, the trial court's dispositional ruling was erroneous.

Although Mother did not object at the termination proceeding, such an error

involves a statutory mandate that is preserved despite the absence of objection. *See In re J.C.-B.*, 276 N.C. App. 180, 192 (2021) ("When an appellant argues the trial court failed to follow a statutory mandate, the error is preserved, and the issue is a question of law and reviewed *de novo*." (citation omitted) (emphasis in original)). "[W]hen a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding [the] defendant's failure to object at trial." *In re J.T.S.*, 268 N.C. App. 61, 67 (2019) (citation omitted).

A GAL is appointed to protect the juvenile's interests "at every stage of the proceeding." *In re R.A.H.*, 171 N.C. App. 427, 431 (2005) (citations omitted). Under N.C.G.S. § 7B-601(a), a GAL's duties include:

> to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court.

N.C.G.S. § 7B-601(a) (2023). Therefore, "one of the statutorily enumerated functions of a GAL is to assist the trial court in making its best interest determination during the dispositional stage." *In re R.D.*, 376 N.C. 244, 250 (2020); *see also In re K.J.E.*, 288 N.C. App. 325, 331 (2023) ("[O]ne of the functions of the GAL is to provide

- 11 -

information to the trial court to aid the trial court's decision regarding the child's best interest." (citation omitted)).

This Court recently addressed a similar issue in *In re S.D.H.*, 296 N.C. App. 392 (2024). There, the respondent argued that the trial court failed to comply with statutory mandates by ruling on disposition without evidence from the GAL. *Id.* at 403. This Court explained the GAL must "offer evidence, either written reports, testimony, or both, recommending to the trial court which course of action is in the best interests of the child." *Id.* at 401. Thus, "the Juvenile Code imposes an implicit duty upon the trial court to ensure the role(s) of the guardian ad litem are performed as required by statute." *Id.* at 402 (*citing* N.C.G.S. §§ 7B-601(a), 1108(b)).

In *In re S.D.H.*, the record contained no evidence from the GAL. *In re S.D.H.*, 296 N.C. App. at 404. There was no indication that the GAL conducted a pre-trial investigation or prepared reports to inform the trial court of the juveniles' best interests. *Id.* The trial court therefore ruled on disposition without any evidence from the GAL. *Id.* This Court held, "the trial court had an implicit duty to receive information or evidence from the Guardian ad Litem at the hearing to allow the trial court to determine whether the Guardian ad Litem sufficiently performed his duties." *Id.* at 404. Moreover, "a trial court cannot properly consider all relevant criteria set out in Section 7B-1110(a) where it wholly lacks evidence from the guardian ad litem for the juveniles." *Id.* Without evidence from the GAL and corresponding recommendations, the trial court could not properly determine the juvenile's best

interests. *Id.*

Regarding whether the respondent was prejudiced, this Court in *In re S.D.H.* relied on *In re R.A.H.*, where the trial court failed to appoint a GAL until four days into the termination hearing. *See In re R.A.H.*, 171 N.C. App. at 430–31. In *In re R.A.H.*, the Court held that when "a child [is] not represented by a guardian ad litem at a critical stage of the termination proceedings," prejudice is presumed. *Id.* at 431. Likewise, in *In re S.D.H.*, the Court concluded that although the GAL was present at the entirety of the hearing, the juveniles lacked effective representation because the GAL failed to present any evidence or advocate on their behalf. *In re S.D.H.*, 296 N.C. App. at 404. As a result, the Court determined the circumstances were comparable to *In re R.A.H.*, since the trial court proceeded without adequate representation from the GAL. *Id.* at 403. This Court ultimately remanded for a new dispositional hearing, while the adjudication ruling remained undisturbed. *Id.* at 405.

In the present case, the record similarly shows no evidence offered by the GAL. The GAL did not present written reports or testimony, nor did he question witnesses, make arguments, or provide the trial court insight into the juvenile's best interests. Although the termination order incorporates prior orders and GAL reports, the GAL was still statutorily required to offer evidence at disposition. The trial court had a duty to receive such evidence and could not properly determine the best interests of the juveniles without it. We, therefore, presume prejudice. Thus, consistent with *In*

*re S.D.H.*, we hold the trial court erred by ruling on disposition without evidence from the GAL.


## IV.    Conclusion

We hold that the trial court failed to fulfill its statutory duty to receive evidence from the GAL necessary to determine the juveniles' best interests.  Without such evidence, the trial court could not properly rule on disposition.  Accordingly, we do not disturb the trial court's adjudication ruling, but we vacate the termination order and remand for a new dispositional hearing.

VACATED AND REMANDED FOR NEW DISPOSITION HEARING.

Panel consisting of Chief Judge DILLON and Judges FLOOD and MURRY.

Report per Rule 30(e).